### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**KENNETH E. CARTER,**

      **Petitioner,**

**v.**                           **Case No.: 2:14-cv-11952**

**DAVID BALLARD, Warden,**
**Mount Olive Correctional Complex**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court are Petitioner Kenneth E. Carter's ("Carter") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 9); "Petition for Court Order for the Expropriated Case Material," (ECF No. 18); Petition to "Supplement, Update his Petition for Court Order for the Exropriated Case Material," (ECF No. 19); Petition to Amend Petition for Writ of Habeas Corpus, (ECF No. 20); and Petition for a Writ of Prohibition, (ECF No. 30). Also pending is Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus for Failure to Exhaust, (ECF No. 32). This case is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Preliminarily, the undersigned **GRANTS** Carter's Petition to "Supplement, Update his Petition for Court Order for the Expropriated Case Material," (ECF No. 19), and Petition to Amend Petition for Writ of Habeas Corpus, (ECF No. 20), for good cause. The additional materials supplied by Carter have been considered in evaluating the pending issues. The undersigned also notes that the record before the court is well-developed and provides a sufficient basis upon which to resolve this matter without need for an evidentiary hearing. *See* Rule 8, Rules Governing Section 2254 Cases.

Having thoroughly reviewed and considered the record, the undersigned **FINDS** that Carter has failed to exhaust his state court remedies as to some of his claims, and thus, he has prematurely filed his petition for a writ of habeas corpus in this court. Nevertheless, the undersigned **RECOMMENDS** that the District Judge **FIND** that Carter is entitled to a stay while he exhausts his state court remedies for his unexhausted claims. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Respondent's Motion to Dismiss, without prejudice; **DENY** Carter's request for habeas relief, without prejudice; **GRANT** Carter a **STAY** so that he may pursue his state court remedies; and hold Carter's habeas petition in **ABEYANCE** pending exhaustion of his state court remedies. In light of the timeliness concerns reflected in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, the undersigned further **RECOMMENDS** that the District Judge condition the stay on Carter pursuing his state court remedies within **thirty days** of the date that the order to stay is entered and require Carter to return to federal court **thirty days** after he has exhausted his state court remedies. Additionally, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** and **DISMISS** the petition for a writ of prohibition,

with prejudice. Finally, the undersigned **RECOMMENDS** that the District Judge **DENY** and **DISMISS, without prejudice,** the "Petition for Court Order for the Expropriated Case Material." (ECF No. 18).

## I.   Procedural History

### A. Indictment, Trial, and Appeal

In September 2011, Carter was indicted by a Kanawha County grand jury for the first-degree murder of Ronald Forton and the malicious wounding of Bradie Dunlap. (ECF No. 32-1 at 2-3). Thereafter, Carter proceeded to trial in the Circuit Court of Kanawha County. On March 19, 2012, Carter's first trial ended in a mistrial due to a hung jury. (*Id.* at 11-12). On May 14, 2012, at his second jury trial, Carter was found guilty of both counts. (*Id.* at 16, 117, 125). On June 11, 2012, Carter was sentenced to life in prison for the first-degree murder conviction and was given an additional two-to-ten year sentence on the malicious wounding conviction, which was to run consecutive to the life sentence. (*Id.* at 125-26).

Carter appealed his convictions to the Supreme Court of Appeals of West Virginia ("WVSCA") on June 22, 2012. (*Id.* at 128). In his notice of appeal, Carter, through counsel, raised eight assignments of error:

> 1. The circuit court erred in failing to dismiss the indictment because the indictment was based on the false testimony of Mr. Dunlap. (*Id.* at 134).
>
> 2. The circuit court erred in denying Carter's motion for judgment of acquittal because Mr. Dunlap's testimony was incredible. (*Id.*)
>
> 3. The prosecutor made improper statements throughout the trial, including characterizing Carter as a murderer and making misleading statements regarding DNA evidence. (*Id.*)
>
> 4. The circuit court erred in admitting "prejudicial 404(b) evidence" related to another alleged assault and other alleged acts of violence testified to by Mr. Dunlap. (*Id.* at 134-35).

5. The circuit court erred in allowing Charles Jarrett, "a jailhouse snitch," to testify when Mr. Jarrett was to have a trial with the same prosecutor and in front of the same circuit judge the following week. (*Id.* at 135).

6. The circuit court erred by not declaring a mistrial "when a juror panel member declared he was an employee at the South Central Jail, and, after being dismissed for cause, [the juror] greeted [Carter] upon leaving the room in front of the panel." (*Id.*)

7. The circuit court erred by denying Carter's motion to "interrogate the jury foreman" because "many of the jurors had served on a jury several weeks before with the same judge and prosecutor on a murder case in which they found the defendant guilty." (*Id.*)

8. The circuit court erred by denying Carter's motion for further DNA analysis. (*Id.* at 135-36).

On October 16, 2013, the WVSCA heard oral arguments on Carter's appeal. (*Id.* at 138). Nine days later, Carter's convictions and sentences were affirmed in a per curiam opinion. (*Id.* at 142). Carter then mailed a petition for rehearing that was received by the WVSCA Clerk's Office on November 27, 2013. (*Id.* at 158). The Clerk's Office refused to file the petition because, according to the Clerk, a petition for rehearing must be filed within thirty days of the release of the WVSCA's opinion, which in this case occurred on October 25, 2013, making the deadline for filing a rehearing petition November 25, 2013. (*Id.*) Nothing in the record suggests that Carter ever subsequently filed a habeas petition in West Virginia state court. (*See* ECF No. 33 at 4).

**B. Habeas Petition**

On June 2, 2014, Carter filed his section 2254 petition with this Court. (ECF No. 9 at 1). His original petition contained nine grounds for relief, (*id.* at 6-19), and as amended, Carter's petition contains thirteen grounds for relief. (ECF No. 13 at 4-11; ECF No. 20-2 at 1-7). Those grounds are:

1. Carter was denied due process of law under the Fourteenth Amendment to the United States Constitution when the circuit court judge denied further DNA testing. (ECF No. 9 at 6-7).

2. Carter was denied his right to effective assistance of counsel under the Sixth Amendment when trial counsel "failed to object to the variance of the redacted DNA analysis report" and failed to fully develop or analyze the report results. (*Id.* at 8).

3. Carter was denied his right to effective assistance of counsel when counsel failed to call any witnesses or medical experts to testify to Carter's ongoing physical disabilities. (*Id.* at 9-10).

4. Carter was denied due process of law under the Fourteenth Amendment when the circuit court permitted the prosecutor to present prejudicial "404(b) evidence" through Mr. Dunlap's testimony, including testimony related to another alleged assault and other alleged acts of violence performed by Carter. (*Id.* at 10-12).

5. Carter was denied due process of law under the Fourteenth Amendment when the circuit court judge "denied the prosecutor had any collusion with" Mr. Jarrett and permitted Mr. Jarrett to testify. (*Id.* at 12-14).

6. Carter was denied due process of law under the Fourteenth Amendment when the prosecutor was permitted to present "404(b) evidence" through the testimony of Mr. Dunlap at Carter's second trial because Mr. Dunlap's testimony at the second trial differed from Mr. Dunlap's "404(b) testimony" at the first trial. (*Id.* at 15).

7. Carter was denied his right to effective assistance of counsel because counsel "failed to object to the prosecutor's testifying assertiveness" and counsel was neither physical nor mentally capable of handling Carter's case. (*Id.* at 16).

8. Carter was denied due process of law under the Fourteenth Amendment when the circuit court permitted the prosecution to introduce testimony through a West Virginia Department of Health and Human Resources worker, Donna Thompson, that Carter had pending against him an "illegal marriage complaint" and a complaint of "child neglect and abuse." (*Id.* at 16-18).

9. Carter was denied his right to effective assistance of counsel when counsel failed to impeach Mr. Jarrett "with the facts that . . . [Carter] was in the hospital coma unit in [a] coma and never before knew of [Mr. Jarrett]" until the time of trial. (*Id.* at 19-20).

10. Carter was denied due process of law under the First and Fourteenth Amendments when the WVSCA failed to apply the "mailbox rule" to his petition for rehearing. (ECF No. 13 at 4-6).

11. Carter was denied his right to effective assistance of counsel when counsel failed to adequately investigate the basis for Mr. Jarrett's testimony and failed to object to Mr. Jarrett's false testimony. (*Id.* at 7-9).

12. Carter was denied due process of law under the Fourteenth Amendment when the circuit court failed to dismiss the "jury panel entirely" after a South Central Jail correctional officer discussed with other potential jurors what he knew about Carter and Mr. Jarrett, which affected Carter's presumption of innocence. In addition, Carter was denied due process when seven members of the jury served on a jury together two weeks earlier in a trial with the same circuit court judge and the same prosecutor. (*Id.* at 10-11).

13. Carter was denied due process of law under the Fifth and Fourteenth Amendments when the circuit court permitted the same indictment from the first trial to be used for the second trial. (ECF No. 20-2 at 1-7).

On June 4, 2014, the undersigned issued an order directing Respondent to show cause as to why relief should not be granted to Carter. (ECF No. 12 at 2). After the undersigned twice extended the deadline, Respondent filed his answer along with a motion to dismiss Carter's habeas petition on September 9, 2014. (ECF Nos. 31 & 32). In both Respondent's answer and motion to dismiss, he asserts that Carter's section 2254 petition should be dismissed because Carter has failed to exhaust his state court remedies for some of his claims, resulting in a "mixed petition" containing both exhausted and unexhausted claims. (ECF No. 31 at 4-5; ECF No. 32 at 1). As such, Respondent contends that the Court must dismiss the petition and give Carter the opportunity to either exhaust his state remedies through state habeas proceedings, or amend his petition to include only those claims for which he has exhausted his state remedies. (ECF No. 31 at 5). In his response brief, Carter contends that he need not exhaust his state court remedies because a miscarriage of justice would result if he were

required to return to state court as he is actually innocent of the crimes for which he was convicted. (ECF No. 41 at 4-5, 9-10). Additionally, Carter appears to maintain that he raised the unexhausted claims of ineffective assistance of counsel in *pro se* filings on direct appeal and in his petition for rehearing to the WVSCA, but the court either refused to file the documents containing these claims, or already denied them. (*Id.* at 13).

### C. Other Petitions

In addition to his section 2254 petition, Carter has also filed a "Petition for Court Order for the Expropriated Case Material" and a petition for a writ of prohibition. (ECF Nos. 18 & 30). In the former petition, Carter alleges that shortly after filing his habeas action, he was placed in the prison's segregation unit and his "legal case materials" were confiscated. (ECF No. 18 at 2). Although the only "legal case materials" specifically identified by Carter are crime scene photographs, he requests that the Court order their return. (*Id.* at 3). Respondent has not answered this petition.

In Carter's petition for a writ of prohibition, he asserts that the circuit court ordered him to pay for the cost of DNA testing, the results of which were used at his trials. (ECF No. 30 at 2-3). Carter requests that this Court issue an order "revers[ing] and dismiss[ing]" the circuit court's order given that none of the results revealed the presence of Carter's DNA on the objects tested. (*Id.* at 5). In his response to the petition for a writ of prohibition, Respondent argues that the petition must be denied and dismissed because Carter failed to appeal the circuit court's order to the WVSCA and "a writ of prohibition is an inappropriate substitute for an appeal." (ECF No. 34 at 2). Furthermore, Respondent asserts that Carter's petition for a writ of prohibition must be denied for failing to state a claim of constitutional dimension. (*Id.* at 3).

## II.     __Standard of Review__

Respondent has filed a motion to dismiss Carter's habeas petition under Federal Rule of Civil Procedure 12(b)(6), based upon Carter's failure to exhaust state remedies. Because Respondent filed an answer concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Walker v. Kelly*, 589 F.3d at 139. However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in section 2254 actions. *Id.* at 138-39.

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nevertheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a section 2254 case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.*

III.   **Discussion**

**A. Exhaustion of Carter's Habeas Claims**

Respondent's sole argument for dismissal of Carter's section 2254 petition is that Carter has failed to exhaust his state remedies for some of the claims that he has presented in his petition. (ECF No. 31 at 4-5; ECF No. 32 at 1; ECF No. 33 at 11-13). Because Carter's habeas petition is a "mixed petition," Respondent insists that the Court must dismiss the petition and give Carter the opportunity to either exhaust his state remedies through state habeas proceedings or amend his petition to include only those claims for which he has exhausted his state remedies. (ECF No. 31 at 5). Carter responds that his failure to exhaust should be excused because he is actually innocent. (ECF No. 41 at 4-5, 9-10). In addition, Carter appears to maintain that he raised the unexhausted claims of ineffective assistance of counsel in *pro se* filings on direct appeal and in his petition for rehearing to the WVSCA, but the court either refused to file the documents containing these claims, or denied the claims. (*Id.* at 13). However, he has not filed any documents to substantiate this assertion.[1]

As a prerequisite to filing a section 2254 proceeding, a habeas petitioner must exhaust his state remedies. 28 U.S.C. § 2254(b)(1)(A). Exhaustion of state remedies requires the petitioner to fairly present the federal constitutional issues to the state courts and allow them "one full opportunity" to resolve the issues. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Given that the purpose of exhaustion

---

[1] Carter also maintains that his habeas petition is not a "mixed petition" because it is based on newly discovered evidence. (ECF No. 41 at 3). Regardless, Carter neither elaborates on, nor provides any factual or legal support for this proposition. Furthermore, any "new evidence" in support of claims already resolved on the merits by the WVSCA cannot be considered by this Court. *Cullen v. Pinholster*, ____ U.S. ____, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). To the extent that the "new evidence" would create additional claims not yet addressed by the WVSCA, those claims are obviously unexhausted.

is to ensure that the state has "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Picard*, 404 U.S. at 275 (internal quotations omitted), fair presentation demands that the state courts be fully informed of "'both the operative facts and the controlling legal principles.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). While it is unnecessary to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (internal citations omitted). Instead, the petitioner must present the "substance of a federal habeas corpus claim" to the state courts. *Picard*, 404 U.S. at 278.

In West Virginia, exhaustion is accomplished in one of three ways: by (1) presenting the federal constitutional issues directly to the WVSCA through an appeal of the conviction or sentence; (2) filing a petition for a writ of habeas corpus under the WVSCA's original jurisdiction and receiving a dismissal with prejudice;[2] or (3) filing a petition for a writ of habeas corpus in the appropriate circuit court followed by an appeal of the judgment to the WVSCA, if the result is adverse. *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D.W.Va. 1995); *Bayerle v. Godwin*, 825 F.Supp. 113, 114-15 (N.D.W.Va. 1993); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545-46 (S.D.W.Va. 1986); *see also Gardner v. Plumley*, No. 2:12-cv-03386, 2013 WL 5999041, at *5 (S.D.W.Va. Nov. 12, 2013). In general, the district court may not review a federal habeas petition

---

[2] However, an original jurisdiction petition that is denied without any indication that the denial was with prejudice, following a determination on the merits, does not exhaust the prisoner's state court remedies. *See Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990), *abrogated on other grounds by Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997).

unless there has been "total exhaustion" of the presented issues. *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Thus, when a petitioner has failed to exhaust his state court remedies, a federal habeas petition should be dismissed. *See Preiser v. Rodriguez*, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In the event that a federal habeas petitioner presents a "mixed petition" consisting of both exhausted and unexhausted claims, the district court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in state court;[3] or (3) allow the petitioner to remove the unexhausted claims and proceed with the exhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277-78, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). The court may also deny the unexhausted claims on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(2); *see also White v. Keller*, No. 1:10-CV-841, 2013 WL 791008, at *5 (M.D.N.C. Mar. 4, 2013).

Carter has not exhausted his state court remedies for claims 2, 3, 7, 8, 9, 10, 11, and 13 of his habeas petition because these claims were not presented to the WVSCA in one of the three ways described above. *Kirby*, 879 F.Supp. at 593. With regard to any alleged ineffective assistance of counsel claims (claims 2, 3, 7, 9, and 11), Carter has failed to supply the Court with any evidence supporting his assertion that he raised the issue in *pro se* filings with the WVSCA. Moreover, Carter has neither described the

---

[3] Stay and abeyance is only appropriate in limited circumstances in which the district court determines that "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 277-78, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005); *Wright v. Keller*, No. 3:11-cv-341-RJC, 2011 WL 5827236, at *2 (W.D.N.C. Nov. 18, 2011) (declining to order stay and abeyance); *Abido v. Ballard*, No. 2:08-cv-00341, 2009 WL 772918, at *2 n.2 (S.D.W.Va. Mar. 18, 2009) (same); *Wilson v. Humphrey*, No. 5:05-cv-00795, 2006 WL 643154, at *3 (S.D.W.Va. Mar. 10, 2006) (same).

ineffective assistance of counsel claims allegedly raised in those *pro se* filings, nor stated whether the substance of those claims match the substance of the claims raised in his habeas petition. In addition, to the extent that Carter relies on his petition for rehearing to the WVSCA to support his position on exhaustion, any claims raised in that petition for rehearing do not satisfy the exhaustion requirement in West Virginia. *See Kirby*, 879 F.Supp. at 593; *see also Hedrick v. True*, 443 F.3d 342, 365 n.1 (4th Cir. 2006) ("Raising a claim in a petition for rehearing does not fairly present the claim to the state's highest court.").

The exhaustion barrier may only be removed when "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). These statutory exceptions apply "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). Carter has not argued that his failure to exhaust should be excepted under either prong of 28 U.S.C. § 2254(b)(1)(B). Indeed, Carter would be permitted to raise his ineffective assistance of counsel claims in a state habeas proceeding, which is the WVSCA's preferred proceeding for addressing those types of claims, and there is no reason to believe that this process would be futile.[4] *See State v. Frye*, 650 S.E.2d 574, 575 (W.Va. 2006) ("Because the issue of ineffective assistance of counsel has been presented for the first time on appeal rather than the preferred method of seeking relief through a habeas corpus proceeding, there are no rulings from the circuit court to provide a basis for

---

[4] There is no statute of limitations for filing a state habeas petition in West Virginia. W. Va. Code § 53-4A-1(e); *Gleason v. Janice*, No. 3:13-cv-61, 2013 WL 5724066, at *4 (N.D.W. Va. Oct. 21, 2013).

review.").[5]

As for the claims unrelated to ineffective assistance of counsel (claims 8 and 13), the exhaustion analysis differs. Claim 8, related to Donna Thompson's testimony, and claim 13, related to using the same indictment for both trials, could have been raised on direct appeal to the WVSCA, but they were not. Typically, under West Virginia law, those claims could not then be raised at a later time in state habeas proceedings because those claims are presumed to be waived by the petitioner.[6] W. Va. Code § 53-4A-1(c) (creating rebuttable presumption that state habeas petitioner knowingly and intelligently waives any claim that could have been presented on direct appeal but that was not presented at that time); *McBride v. Lavigne*, 737 S.E.2d 560, 573 (W. Va. 2012) (applying rule). Where a state court would refuse to hear a claim as a result of a petitioner's failure to observe state procedural rules, the claim is considered to be exhausted because there is "an absence of available State corrective process." *See, e.g.*, *Rose v. Lee*, No. 7:07-cv-00003, 2007 WL 2050823, at *3 (W.D.Va. July 12, 2007) (citing *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)); *see also Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."); *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) ("State remedies are

---

[5] *See also State v. Triplett*, 421 S.E.2d 511, 522 (W. Va. 1992) ("[I]t is the extremely rare case when [the WVSCA] will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied.").

[6] As noted above, claim 10 is also unexhausted. That claim relates to Carter's petition for rehearing sent to the WVSCA Clerk's Office. Setting aside that the merits may not allege any federal constitutional issue, Carter clearly could not have raised that issue on direct appeal to the WVSCA. Thus, the claim is not waived under West Virginia Code § 53-4A-1(c).

exhausted when the petitioner does not have the 'right under the law of the State to raise, by any available procedure, the question presented.'") (quoting 28 U.S.C. § 2254(c)). However, even though such claims are technically exhausted, the procedural default doctrine would apply in any subsequent federal habeas proceedings to prevent a federal court from reaching their merits. *See Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009) ("Federal courts may not hear a section 2254 claim if a state court disposed of the claim on adequate and independent state-law grounds, unless the petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule.").

Here, the state circuit court and the WVSCA might refuse to hear claims 8 and 13 in a state habeas proceeding because Carter failed to raise the issues on direct appeal when he had the opportunity to do so. *See* W. Va. Code § 53-4A-1(c). However, "[i]f any reasonable possibility exists that the state court may apply an exception to its procedural default rule, the federal court should not apply a state procedural bar to find that exhaustion is futile." *Meadows v. Legursky*, 904 F.2d 903, 909 (4th Cir. 1990), *abrogated on other grounds by Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997); *see also Green v. McBride*, No. 3:02-cv-01348, slip op. at 8 (S.D.W.Va. Feb. 22, 2006) (citing *Meadows* and finding reasonable possibility existed that state court may find petitioner's unexhausted claims were not procedurally barred where state court could reasonably conclude petitioner did not intelligently and knowingly waive claims or claims could be subject to state procedural rule exception).

A reasonable possibility exists that the state circuit court and the WVSCA may address claims 8 and 13 on the merits. While not listed as a ground for relief in his habeas petition, Carter has asserted that his appellate counsel was ineffective. (ECF No.

20 at 3; ECF No. 41 at 11-12). The ineffectiveness of appellate counsel, if established, could certainly persuade the state courts to address the merits of claims 8 and 13.[7] *See Kees v. Nohe*, No. 11-1465, 2013 WL 149614, at *13 (W. Va. Jan. 14, 2013) (adopting and incorporating circuit court opinion wherein circuit court considered claim of ineffective assistance of appellate counsel when addressing waiver of claim that could have been raised on direct appeal); *State ex rel. Stotler v. Ballard*, No. 11-1282, 2012 WL 4069653, at *11 (W.Va. Sept. 7, 2012) (same); *cf. Losh v. McKenzie*, 277 S.E.2d 606, 611 (W.Va. 1981) (recognizing that ineffective assistance of habeas counsel in previous state habeas proceeding may excuse waiver of claims not raised for purposes of subsequent habeas proceeding). Thus, because a reasonable possibility exists that the state court may find that Carter's unexhausted claims (claims 8 and 13) are not procedurally barred, the undersigned cannot conclude that exhaustion of these claims would be futile.

Turning now to Carter's miscarriage of justice or actual innocence argument, that doctrine solely applies where a procedural default is found, not where exhaustion of state remedies is still available to the petitioner. *Morabito v. Krysevig*, No. 06-1415, 2007 WL 2071889, at *2 (E.D.Pa. July 18, 2007) ("[H]owever much they may overlap in practice, exhaustion and procedural default are analytically distinct categories, and the excuses of 'cause and prejudice' or 'miscarriage of justice' are only applicable to procedural default."). In other words, the miscarriage of justice exception does not alleviate a petitioner's burden to exhaust a state remedy that is still attainable. Because Carter may still return to state court to exhaust his claims, his claims have not yet been procedurally defaulted. Consequently, the miscarriage of justice doctrine is currently

---

[7] The state courts might also overlook any procedural bar because they will be tasked with addressing the merits of Carter's ineffective assistance of counsel claims anyway, and thus, they could reasonably choose to further address the merits of claims 8 and 13 rather than summarily deny the claims on a procedural bar basis.

inapplicable to Carter's petition. *Morabito*, 2007 WL 2071889 at *2 ("Where there is no procedural default, there is no 'miscarriage of justice' exception.").

Having concluded that Carter has presented both exhausted and unexhausted claims in his petition without establishing any applicable exception to the AEDPA's exhaustion requirement, the undersigned must consider whether stay and abeyance is appropriate in this case. As stated above, stay and abeyance is only appropriate in limited circumstances in which the district court determines that "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 277-78, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). "[T]he practice of staying a federal habeas case while a petitioner returns to state court to exhaust his claims should be used sparingly." *Kanode v. Waid*, No. 1:08-1113, 2011 WL 2633645 (S.D.W.Va. July 5, 2011).

In *Rhines*, the Supreme Court provided little guidance as to what constitutes good cause in the context of stay and abeyance. *See Rhines*, 544 U.S. at 279 (Stevens, J., concurring) ("[G]ood cause for failing to exhaust state remedies more promptly ... is not intended to impose the sort of strict and inflexible requirement that would trap the unwary *pro se* prisoner.") (internal markings and citation omitted). Since its decision in *Rhines*, the Supreme Court has offered one example of good cause, albeit in *dicta*. In *Pace v. DiGuglielmo*, 544 U.S. 408, 416, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005), the Court stated that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court" before exhausting his state court remedies. Some courts have interpreted *Pace* to require a broad interpretation of the good cause requirement set forth in *Rhines*. *See,*

*e.g.*, *McCrae v. Artus*, No. 10-CV-2988, 2012 WL 3800840, at *8 (E.D.N.Y. Sept. 2, 2012).

The Fourth Circuit and courts in this district have yet to precisely define what constitutes good cause under *Rhines*. Other federal courts differ on how stringently to define good cause in the context of stay and abeyance. *See Provencio v. Chrones*, No. 06-1760, 2007 WL 1299967, at *2-*6 (S.D.Cal. Apr. 30, 2007) (collecting cases containing various definitions for good cause standard); *Williams v. Hurley*, No. 2:05-cv-985, 2006 WL 1650771, at *10 (S.D.Ohio June 6, 2006) (report and recommendation discussing various definitions applied and noting that some courts have adopted standard for cause applicable to procedural default while other courts have declined to do so); *compare Landeck v. Allen*, No. 3:14-CV-88, 2014 WL 5410630, at *4 (E.D.Va. Oct. 22, 2014) (recognizing that standard should not be "inordinately demanding") *with Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008) (declining to adopt "broad interpretation" of good cause because such interpretation would undermine goals of AEDPA). Consequently, federal courts have also disagreed as to what constitutes good cause in the stay analysis. *Compare Long v. Ballard*, No. 2:13-cv-26, 2013 WL 6858415, at *6 (N.D.W.Va. Dec. 30, 2013) (finding that good cause did not exist to grant stay where petitioner argued that any subsequent federal habeas petition would be time barred), *with Smith v. Wolfe*, No. PJM-10-2007, 2011 WL 4548315, at *6 (D.Md. Sept. 27, 2011) (granting stay rather than dismissing without prejudice where any subsequent federal habeas petition would be time barred), *and Murray v. Perry*, No. 3:06-CV-51, 2007 WL 601494, at *5 (N.D.W.Va. Feb. 22, 2007) (magistrate judge recommending stay where any subsequent federal habeas petition would be time barred), *and Clement v. Blair*, No. 06-00351, 2007 WL 57782, at *3 (D.Haw. Jan. 5, 2007) (recognizing that

"impending expiration of [AEDPA's] statute of limitations does constitute good cause."); *compare Newman v. Lempke*, No. 13-cv-531, 2014 WL 4923584, at \*3 (W.D.N.Y. Sept. 30, 2014) (recognizing ignorance or confusion about law may constitute good cause), *and Provencio*, 2007 WL 1299967, at \*5 (report and recommendation finding that ignorance of law and reasonable confusion as to whether state court habeas petition would be timely satisfied good cause standard), *and Riner v. Crawford*, 415 F.Supp.2d 1207, 1211 (D.Nev. 2006) (holding that good cause exists where petitioner can "show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control"), *with Jackson v. Baenen*, No. 12-cv-00554, 2012 WL 5988414, at \*2 (E.D.Wis. Nov. 29, 2012) (holding ignorance of law does not constitute good cause), *and McIntyre v. Quarterman*, No. 3-09-cv-0574, 2009 WL 1563516, at \*3 (N.D.Tex. June 2, 2009) (same).

Turning to the relevant facts in the good cause analysis here, the undersigned estimates that the AEDPA's one-year statute of limitations will expire in this case on January 24, 2015. 28 U.S.C. § 2244(d)(1)(A). Carter's direct appeal was decided by the WVSCA on October 25, 2013. He then had ninety days to seek a writ of certiorari from the Supreme Court. Sup. Ct. R. 13(1). One day after that ninety days had passed,[8] on January 24, 2014, the AEDPA's one-year statute began to run unless state habeas relief was sought, which would toll the limitations period. 28 U.S.C. § 2244(d)(2). However, as stated above, Carter has not initiated state habeas proceedings. While Carter did file a petition for rehearing with the WVSCA, it was untimely, and an untimely petition for rehearing does not prevent the AEDPA's statute of limitations from running. *See, e.g.,*

---

[8] Under Federal Rule of Civil Procedure 6(a), the one-year limitation period commences the day after the event triggering the period. *See Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

*Shores v. Johnson*, No. 7:10-cv-00496, 2011 WL 1897198, at n.3 (W.D.Va. May 16, 2011) (citing *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed. 2d 213 (2000)). In addition, Carter's filing of this federal habeas petition did not toll the AEDPA's statute of limitations. *Holmes v. Ballard*, No. 3:13-cv-97, 2014 WL 1516305, at *14 (N.D.W.Va. Apr. 17, 2014) (citing *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)). Thus, if Carter's habeas petition is dismissed without prejudice, Carter would have thirty-nine days from the date of this PF&R to file a state habeas petition, which will toll the one-year statute of limitations until the conclusion of state habeas proceedings. At the conclusion of state habeas proceedings, Carter would then have whatever amount of time is left in his thirty-nine-day balance to return to federal court by filing another federal habeas petition. Taking into account the time allowed for the filing of objections to this PF&R, combined with the time that may pass before the presiding District Judge is able to review the matter given his extremely demanding docket, Carter is likely to have substantially less than thirty-nine days remaining in which to exhaust his state remedies and return to federal court, if his petition is dismissed. Indeed, he may have no future opportunity to return to federal court. As noted above, some courts consider the existence of such time constraints and the possible bar of future federal court review to be a prerequisite to the application of the *Rhines* test. *See, e.g.*, *Long*, 2013 WL 6858415, at *6. While those courts require good cause apart from any time-bar consequence, other courts find the potential hardship facing Carter to be sufficient cause, by itself, for granting a stay. *See, e.g.*, *Wolfe*, 2011 WL 4548315, at *6.

Assuming that the time constraints in this case *alone* are insufficient to meet the good cause standard, good cause still exists to stay Carter's habeas petition. After

reviewing Carter's brief in response to Respondent's motion to dismiss, the undersigned concludes that Carter is confused as to whether some of the claims raised in his federal habeas petition have been procedurally defaulted and as to whether any further relief may be obtained in state court. For example, Carter cites the miscarriage of justice exception to the procedural default doctrine in his brief, demonstrating his belief that some of his claims have been defaulted in state court. (ECF No. 41 at 9-10). Similarly, Carter is apparently under the misconception that federal habeas proceedings are the only avenue available to him to raise ineffective assistance of counsel claims. (*Id.* at 12). While Carter does seem to acknowledge that he has not presented all of the grounds in his federal habeas petition to the WVSCA, he includes this failure as an ineffective assistance of counsel claim, arguing that his appellate counsel is to blame. (ECF No. 9 at 21). Given Carter's confusion regarding the availability of relief in state habeas proceedings, his claims of ineffective assistance of counsel, and the likelihood that Carter's ability to obtain federal habeas relief will be jeopardized if his petition is dismissed, the undersigned finds that good cause for a stay exists in this case. *Cf. Green*, No. 3:02-cv-01348, slip op. at 10 (finding good cause for stay based on petitioner's "lack of knowledge" and claim of ineffective assistance of counsel).

As for the second consideration in assessing the propriety of a stay, the undersigned finds that the unexhausted claims are *potentially* meritorious. Many of Carter's unexhausted claims relate to ineffective assistance of counsel, and the record for these claims has yet to be developed in state habeas proceedings. These claims, if supported by the record created in state habeas proceedings, singularly or in conjunction, may entitle Carter to relief. Thus, at this stage, the court is not in a position to definitively determine that Carter's ineffective assistance of counsel claims lack merit.

As for Carter's other unexhausted claims (claims 8 and 13), the undersigned likewise cannot conclude that they lack any potential merit. The state court should be permitted to develop the necessary record for these claims, including whether the claims should be barred from consideration on the merits by a state procedural rule, and rule on those claims in the first instance.

Finally, as for the third element set forth in *Rhines*, there is no reason to believe that Carter has engaged in "intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. To the contrary, Carter sought post-conviction relief, albeit in the wrong court, in March 2014, not long after the WVSCA Clerk's Office refused his application for rehearing in November 2013. Since filing in this court, Carter has been actively engaged in the process. Moreover, there appears to be no incentive for Carter to participate in dilatory tactics—he clearly wants relief from his conviction and sentence as quickly as possible, and whether that relief is acquired from a state court or federal court likely makes no difference to him. *Cf. Rhines*, 544 U.S. at 277-78 (recognizing that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death.").

Having thoroughly considered the matter, the undersigned **PROPOSES** that the District Judge **FIND** that Carter's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is a mixed petition containing both exhausted and unexhausted claims. Nevertheless, the undersigned **PROPOSES** that the District Judge **FIND** that Carter is entitled to a stay while he exhausts his state court remedies and that Carter's petition should be held in abeyance until that time. In light of the timeliness concerns reflected in the AEDPA, the undersigned further **PROPOSES** that the District Judge condition the stay on Carter pursuing his state court remedies within thirty days of the date that

the order to stay is entered and require Carter to return to federal court thirty days after he has exhausted his state court remedies. *See Rhines*, 544 U.S. at 278. The undersigned further **PROPOSES** that the District Judge **DENY** Carter's request for habeas relief, **without prejudice**, and **DENY** Respondent's motion to dismiss, **without prejudice**.

### B. Writ of Prohibition

In addition to his habeas petition, Carter has also filed a petition for a writ of prohibition. (ECF No. 30). In his petition, Carter asserts that the circuit court has ordered him to pay for the cost of DNA testing, the results of which were used at his trials. (*Id.* at 2-3). Carter has not provided a copy of the circuit court's order requiring the payment of DNA testing costs, but he does assert that he has requested a copy of the order from prison staff and not received it. (ECF No. 30-1 at 8-9; ECF No. 30-2 at 1). Attached to Carter's petition is an August 2014 Mount Olive Correctional Complex Unit Team Request Form wherein Carter asks how much he has paid "regarding [the] DNA order" and what the remaining balance on the order is. (ECF No. 30-1 at 7). Jane Lucas, a staff member at Mount Olive Correctional Complex, replied on August 12, 2014 that Carter "paid $35.08" and that the balance at that time was $456.92. (*Id.*) Carter requests that this Court issue an order "revers[ing] and dismiss[ing]" the circuit court's order requiring him to pay for DNA testing because none of the results revealed the presence of Carter's DNA on the objects tested. (ECF No. 30 at 5). Respondent counters that the petition for a writ of prohibition must be denied and dismissed because Carter failed to appeal the circuit court's order to the WVSCA and "a writ of prohibition is an inappropriate substitute for an appeal." (ECF No. 34 at 2). Furthermore, Respondent asserts that Carter's petition for a writ of prohibition must be denied because it fails to state a claim of constitutional dimension. (*Id.* at 3). In response, Carter asserts that he

has made a number of unsuccessful attempts to challenge the DNA order through "grievances, counsel Mr. [Charles] Hamilton, circuit courts [*sic*] clerks [*sic*] office, and [the] West Virginia Supreme Court of Appeals." (ECF No. 40 at 3). However, Carter has not provided any documentary evidence in support of this assertion.

A writ of prohibition "'is a drastic and extraordinary remedy which should be granted only when the petitioner has shown his right to the writ to be clear and undisputable and that the actions of the court were a clear abuse of discretion.'" *In re Givens*, 564 F. App'x 21 (4th Cir. 2014) (quoting *In re Vargas*, 723 F.2d 1461, 1468 (10th Cir. 1983)). The writ "may not be used as a substitute for appeal," *id.*, and the writ "should be granted only where the petitioner has no other adequate means of relief." *In re Williams*, 405 F. App'x 804, 805 (4th Cir. 2010).

At the outset, the court notes that a writ of prohibition is probably not the proper procedural vehicle for Carter to obtain the relief he seeks. Carter requests that the Court reverse and dismiss the circuit court's order; however, a writ of prohibition cannot undo what has already been done. *United States v. Hoffman*, 71 U.S. 158, 161-62, 18 L. Ed. 354 (1866) ("If the thing be already done, it is manifest the writ of prohibition cannot undo it, for that would require an affirmative act; and the only effect of a writ of prohibition is to suspend all action, and to prevent any further proceeding in the prohibited direction."); *Bates v. McNeil*, 888 S.W.2d 642, 644 (Ark. 1994) (stating writ of prohibition "cannot be invoked to correct an order already entered"); *Sparkman v. McClure*, 498 So. 2d 892, 895 (Fla. 1986) ("Prohibition is preventative, not corrective"); *LeBlanc v. Gist*, 603 S.W.2d 841, 843 (Tex. Crim. App. 1980) (recognizing writ of prohibition will not issue to "undo, nullify, or review an act already performed"). Certainly asking this Court to reverse the state circuit court's order does not fall within

the provision of the writ.

Still, Carter's petition could be read to request that Respondent be prevented from applying any future funds that Carter may receive toward payment of the order. *See City of Charleston v. Beller*, 30 S.E. 152, 154 (W. Va. 1898) (issuing writ of prohibition to prevent execution of circuit court judgment for costs). Assuming that the writ encompasses such a claim, Carter's petition must still be denied for at least two reasons. First, Carter cannot show that he has no other adequate means of relief from the circuit court's order, such as an appeal to the WVSCA. As Respondent points out, Carter is essentially attempting to use the writ as a substitute for an appeal of the circuit court's order, which is improper. *In re Givens*, 564 F. App'x at 21. Even if no other remedy exists, if Carter had the opportunity to appeal the order and simply failed to do so, he is barred from using the writ as an appellate mechanism. *See In re Pitts*, 544 F.App'x 168, 170 (4th Cir. 2013) (denying petition for writ of prohibition where petitioners could have obtained relief by filing appeal but did not do so).

Second, Carter has not established that he is clearly and indisputably entitled to relief. Carter has failed to cite any authority preventing the costs of DNA testing from being imposed on a criminal defendant after conviction. On the contrary, West Virginia Code § 62-5-7 requires "the clerk of the court in which the accused is convicted" to create a statement of costs, including all expenses "incident to the prosecution," and execute that statement of costs "as if, on the day of completing such statement, there was judgment in such court in favor of the State against the accused for such amount as a fine." Costs of pre-trial DNA testing may reasonably fall within the category of expenses "incident to prosecution." *See Diodato v. Florida*, ____ S0. 3d ____; 2014 WL 5614863, at *1-*2 (Fla. Dist. Ct. App. 2014) (holding that cost of DNA testing fell within

statute permitting costs of prosecution to be charged to convicted defendant). Yet, Carter maintains that the circuit court (and not the clerk of court) ordered payment for DNA testing, which could mean that West Virginia Code § 62-5-7 was not utilized for DNA testing costs in this case.[9] Nevertheless, absent any authority to the contrary, which Carter has not supplied, West Virginia Code § 62-5-7 would at least provide a reasonable basis for Carter to be held responsible for DNA testing costs. Certainly, Carter has not shown that it would be a clear abuse of discretion for the circuit court to order such costs. Consequently, it is not plain and indisputable that Carter is entitled to the requested relief. For these two reasons, Carter's petition for a writ of prohibition must be denied.

Having thoroughly considered the matter, the undersigned **PROPOSES** that the District Judge **FIND** that Carter is not entitled to a writ of prohibition. Therefore, the undersigned respectfully **RECOMMENDS** that the District Judge **DENY** Carter's petition for a writ of prohibition, and **DISMISS** the petition, **with prejudice**.

### C. Petition for Expropriated Case Material

Finally, Carter has also filed a "Petition for Court Order for the Expropriated Case Material." (ECF No. 18). In the petition, Carter alleges that shortly after filing his habeas petition, he was placed in the prison's segregation unit and his "legal case materials" were confiscated. (ECF No. 18 at 2). The only "legal case materials" specifically identified in the petition that were allegedly not returned to Carter by the time that he filed his petition are crime scene photographs. (*Id.* at 3). Otherwise, Carter indicates that prison staff returned his "legal materials." (*Id.*) Attached to the petition is

---

[9] There are two other West Virginia statutes that mention costs of DNA testing. West Virginia Code § 15-2B-15 requires persons convicted of certain criminal offenses to pay a $150 fee for the collection of a DNA sample to be placed in a DNA database. West Virginia Code § 15-2B-14(i) regulates the costs associated with post-conviction DNA testing.

a West Virginia Division of Corrections grievance form dated July 17, 2014, wherein Carter asserts that his crime scene photographs were confiscated and that he was told by prison staff that the photographs would be destroyed because he was not allowed to have them. (*Id.* at 5). The grievance form contains no response from prison staff. (*Id.*) Carter has also attached a July 6, 2014 grievance form to his supplemental brief wherein he claims that his "legal material" has not been returned to him from the "state shop."[10] (ECF No. 19 at 5). In response to the grievance, Respondent informed Carter that he would receive his "allowable property after the state shop personnel processes it."[11] (*Id.*) Carter requests that the Court order the return of his crime scene pictures to him. (ECF No. 18 at 3).

Typically, claims related to the confiscation of legal materials are more appropriately raised in a civil rights action, not in a habeas action, because such claims relate to the conditions of a prisoner's confinement. *See McCarthy v. Bronson*, 500 U.S. 136, 142, 111 S.Ct. 1737, 114 L.Ed.2d 194 (recognizing that the Supreme Court had previously described confiscation of legal material claims as challenges to conditions of confinement); *Brown v. Zeigler*, No. 5:12-cv-00178, 2013 WL 4500473, at *6-7 (S.D.W.Va. Aug. 20, 2013) (holding that conditions of confinement claims are not cognizable in habeas proceedings); *Daniel v. Craig*, Nos. 5:07-cv-00465 & 5:07-cv-

---

[10] Carter's supplemental brief has two additional grievance forms attached to it. The first concerns Carter allegedly being denied the services of a notary and copies of documents. (ECF No. 19 at 3). In response, Respondent denied the grievance and asserted that there were no "time-sensitive issues" in Carter's case. (*Id.*) The second grievance concerns Carter's request for forms to appeal a disciplinary hearing result. (*Id.* at 4). Respondent informed Carter that no such form exists. (*Id.*)

[11] It may very well be that Respondent has instituted a policy forbidding prisoner's from possessing crime scene photographs. *See, e.g., Lewis v. Smoker*, No. 1:14-cv-567, 2014 WL 4259466, at *1 (W.D. Mich. Aug. 29, 2014) (describing prison policy forbidding prisoners from possessing crime scene or victim photographs); *McCoy v. McCall*, No. 9:12-0474, 2013 WL 5467678 (D.S.C. Jan. 24, 2013) (report and recommendation noting same). At the time that Carter filed his petition, he had only started the grievance process to attempt to secure the return of the photographs. (ECF No. 18 at 5).

00577, 2008 WL 644883, at *2 (S.D.W.Va. Mar. 7, 2008) (same); *Berry v. McBride*, No. 5:05-cv-01134, 2006 WL 2861077, at *1 (S.D.W.Va. Oct. 5, 2006) (same); *see also Doan v. Buss*, 82 F. App'x 168, 172 (7th Cir. 2003) (holding section 2254 petition was "not the appropriate vehicle" to recover legal materials if materials were unrelated to other habeas claims); *Heller v. Gutierrez*, No. 2:08-cv-107, 2010 WL 692705, at *3 (N.D.W.Va. Feb. 23, 2010) (adopting report and recommendation of magistrate judge wherein magistrate found that claim related to denial of legal materials sounded in civil rights, not habeas corpus); *Kilgore v. Drew*, No. 9:08-3200, 2008 WL 4694532 (D.S.C. Oct. 22, 2008) (recognizing that claim related to confiscation of legal documents was properly brought as civil rights claim, not as habeas claim).[12] Nonetheless, assuming that Carter may bring such a claim within a pending action for habeas relief, his claim does not warrant relief at this time. To the extent that the allegedly confiscated crime scene photographs bear any relationship to the claims raised in this action, which is certainly unclear, Carter has not explained how possessing the photographs would have aided him in preparing his habeas petition or related briefs. *See Doan*, 82 F.App'x at 172 (holding district court did not abuse discretion in refusing to order return of legal materials where petitioner never explained what was taken or how he was harmed by its taking). Nor has Carter asserted how having these photographs may help him in future proceedings. Furthermore, and most importantly, any presentation of the photographs in support of Carter's habeas petition would not affect the undersigned's

---

[12] The Supreme Court stated in *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), that federal habeas corpus may be an available "alternative remedy" to challenge prison conditions. However, the Supreme Court in later decisions has retreated from that statement to leave the question open. *See Muhammad v. Close*, 540 U.S. 749, 752 n.1, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (noting that Supreme Court had "never followed the speculation in [*Preiser*] that a prisoner subject to 'additional and unconstitutional restraints' might have a habeas claim independent of § 1983") (quoting *Preiser*, 411 U.S. at 499); *Bell v. Wolfish*, 441 U.S. 520, 527 n.6, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself.").

recommendation to deny Carter's request for habeas relief without prejudice. Because Carter has not demonstrated that he is entitled to an order requiring Respondent to return his crime scene photographs, his petition requesting the same must be denied.

Having thoroughly considered the matter, the undersigned **PROPOSES** that the District Judge **FIND** that Carter is not entitled to a court order compelling the return of crime scene photographs. Therefore, the undersigned respectfully **RECOMMENDS** that the District Judge **DENY** and **DISMISS, without prejudice,** Carter's "Petition for Court Order for the Expropriated Case Material."

## IV.    <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1.    The relief sought in Carter's Petition for Writ of Habeas Corpus by a Person in State Custody, (ECF No. 9), be **DENIED, without prejudice**;

2.    Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus for Failure to Exhaust, (ECF No. 32), be **DENIED, without prejudice**;

3.    Carter be **GRANTED** a **STAY** so that he may pursue his state court remedies for his unexhausted claim and that the stay be conditioned on Carter pursuing his state court remedies within **thirty days** of the date that the order to stay is entered;

4.    Carter's habeas petition be held in **ABEYANCE** pending exhaustion of state court remedies, and Carter be required to return to federal court within **thirty days** after he has exhausted his state court remedies and seek to lift the stay;

4.    Carter's Petition for a Writ of Prohibition, (ECF No. 30), be **DENIED** and **DISMISSED**, **with prejudice**; and

5.    Carter's "Petition for Court Order for the Expropriated Case Material," (ECF No. 18), be **DENIED** and **DISMISSED**, **without prejudice**.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Carter, Respondent, and counsel of record.

**FILED:** December 16, 2014.

Cheryl A. Eifert
United States Magistrate Judge